UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES S. LONGSHORE,

                Plaintiff,

  v.

SCOTT RUSSELL, SGT. QUENGA, SGT. MCKANNEY, SGT. ROBERTS, C/O TROTTER, and STEVEN DEMARS,

                Defendants.

No. C11-5278 RBL/KLS

**REPORT AND RECOMMENDATION**
**Noted for: March 9, 2012**

Before the Court is Defendants Scott Russell, Joseph Quenga, Albert McAneney[1], Jamison Roberts, Matthew Trotter, and Steven Demars' Motion for Partial Dismissal of Plaintiff Charles S. Longshore's complaint. ECF No. 41. Defendants move for the dismissal of all of Plaintiff's claims except for his Eighth Amendment claim against Defendant Trotter. Defendants request a dismissal with prejudice based on Plaintiff's failure to exhaust his administrative remedies and, in the alternative, for failure to state a claim. They also move to stay discovery. That request has been granted under separate order (ECF No. 44). Plaintiff has filed a response (ECF No. 42) and Defendants have filed a reply (ECF No. 43). Having carefully considered the parties' papers and balance of the record, the Court recommends that all of Plaintiff's claims, except for his Eighth Amendment claim against Defendant Trotter, be dismissed without prejudice for failure to exhaust administrative remedies. The Court does not reach Defendants'

---

[1] Although listed as Sergeant McKanney in the complaint, Defendant advises that the correct spelling of his name is McAneney. ECF No. 41 n. 1.

REPORT AND RECOMMENDATION - 1

stated alternative grounds for dismissal because once it has been determined that a suit filed by a prisoner must be dismissed for failure to exhaust, a district court lacks discretion to resolve those claims on the merits.

**FACTS**

**A.     Plaintiff's Claims**

Plaintiff Charles S. Longshore III is an inmate currently confined within the Washington State Department of Corrections (DOC) at the Washington Corrections Center (WCC). In his Amended Complaint, Mr. Longshore alleges that Corrections Officer Trotter sexually assaulted him during a pat search. ECF No. 11, pp. 1-2. After he told Officer Trotter that he was filing a Prison Rape Elimination Act (PREA) complaint against him, Plaintiff claims that Sgt. Jamison Roberts physically assaulted and threatened him. *Id.*, p. 2. He also alleges that Sgt. Quenga and Sgt. McAneney harassed and intimidated him on a daily basis regarding his threat to report the sexual assault. *Id.* Plaintiff claims that Sgt. McAneney falsely infracted him for wearing unauthorized hair ties and threw away an emergency grievance he had written. He alleges that he has been verbally abused, falsely infracted, victimized, singled out and placed in cell confinement all in retaliation for filing the PREA complaint.

Plaintiff claims Fourth and Eighth Amendment claims against Defendant Trotter stemming from the alleged sexual assault during a pat search; Eighth (assault) and First Amendment (retaliation) claims against Defendant Roberts; First Amendment (retaliation) claims against Defendants McAneney and Quenga; Fifth and Fourteenth Amendment (due process) claims against Defendant McAneney and Eighth Amendment (failure to protect and/or investigate) claims against Defendants Russell and Demars; and an unspecified Thirteenth Amendment claim.

REPORT AND RECOMMENDATION - 2

**B.    The Washington Offender Grievance Program**

The Washington Offender Grievance Program (OGP) has been in existence since the early 1980's and was implemented on a Department-wide basis in 1985. ECF No. 41-1, Exhibit 1 (Declaration of Tamara J. Rowden). Under Washington's OGP, an offender may file a grievance over a wide range of aspects of his/her incarceration. *Id.* ¶ 4. Inmates may file grievances challenging: 1) DOC institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions. An offender may not file a grievance challenging: 1) state or federal law; 2) court actions and decisions; 3) Indeterminate Sentence Review Board actions and decisions; 4) administrative segregation placement or retention; 5) classification/unit team decisions; 6) transfers; 7) disciplinary actions; and 8) several other aspects of incarceration. *Id.* The OGP provides a wide range of remedies available to inmates. *Id.* ¶ 5. These remedies are outlined at OGP page 27 and include: 1) restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by department officials to remedy an objectionable condition within a reasonable time; and 5) a change in a local or department policy or procedure. *Id.* A grievance must be filed within 15 days of the grievable incident. *Id.* ¶ 7.

The grievance procedure consists of four levels of review. *Id.* ¶ 6. At Level 0, the complaint or informal level, the offender writes a complaint; the grievance coordinator then pursues informal resolution of the issue, returns the complaint to the offender for additional information, or accepts the complaint and processes it as a formal grievance. *Id.* At Level I,

REPORT AND RECOMMENDATION - 3

the local grievance coordinator responds to the issues raised by the offender. *Id.* If the offender is not satisfied with the response to his Level I grievance, he may appeal the grievance to Level II. *Id.* All appeals and initial grievances received at Level II are investigated, and the prison superintendent responds. *Id.* If the offender is still not satisfied with the response, he may make a Level III appeal to the Department headquarters, where the issue is reinvestigated and administrators respond. *Id.*

**C.     Plaintiff's Grievances**

On March 30, 2011, Plaintiff submitted Level I grievance number 1106729 alleging Sgt. McAneney was staring at him and verbally harassing him and that Plaintiff was seeking a unit assignment change. ECF No. 41-1, Exh. 1 (Rowden Decl.), Attachment A (Grievance Log I.D. No. 1106729). This grievance was denied. *Id.* Plaintiff could have appealed the denial of this Level I grievance, but did not. Exh. 1, ¶ 12.

On April 6, 2011, Plaintiff submitted Level 0 grievance number 1107256 alleging Correctional Officer Trotter and Sgt. Roberts each assaulted him during a pat search and that Roberts threatened and retaliated against Plaintiff for his comment that he was going to file a complaint. ECF No. 41-1, Exh. 1 (Rowden Decl.), Attachment B (Grievance Log I.D. No. 1107256). Plaintiff failed to show up for his meeting with the grievance coordinator and the case was therefore closed. *Id.* Plaintiff could have appealed the withdrawal of this Level 0 grievance, or re-file it, but he did not. Exh. 1, ¶ 13.

On April 6, 2011, Plaintiff submitted Level I grievance number 1106582 alleging Sgt. Roberts assaulted him and threatened and retaliated against him for his comment that he was going to file a complaint against C/O Trotter. ECF No. 41-1, Exh. 1 (Rowden Decl.), Attachment C (Grievance Log I.D. No. 1106582). This grievance was denied. *Id.* Plaintiff

REPORT AND RECOMMENDATION - 4

appealed the denial of this Level I grievance, to Level II, which was investigated and then denied. *Id.*, Exh. 1, Attachment D. Plaintiff could have appealed the denial of this Level II grievance, but did not. *Id.*, Exh. 1, ¶ 14.

On April 12, 2011, Plaintiff submitted Level 0 grievance number 1107766 alleging Sgt. McAneney and Sgt. Quenga were verbally harassing him as retaliation for filing a complaint against Corrections Officer Trotter and demanding that he be moved to another unit and that an investigation be opened regarding the alleged harassment. ECF No. 41-1 (Rowden Decl.) Exh. 1, Attachment E, (Grievance Log I.D. No. 1107766). This grievance was closed when Plaintiff was transferred to another unit. *Id.* Plaintiff could have appealed the closing of his grievance, but did not. *Id.*, Exh. 1, ¶ 15.

On April 13, 2011, Plaintiff submitted Level I grievance number 1107827 alleging Sgt. Quenga was verbally harassing and intimidating him and demanding that he be moved to yet another housing unit. ECF No. 41-1, Exh. 1, Attachment F (Grievance Log I.D. No. 1107827). This grievance was denied. *Id.* Plaintiff could have appealed the denial of this Level I grievance, but did not. *Id.*, ¶ 16.

Plaintiff did not file grievances regarding his other allegations, *i.e.,* his transfer to Housing Unit R2, his allegation of being charged with a false infraction regarding his hair ties, and his allegation that Defendants Russell and Demars ignored his requests for an investigation and failed to move him when he wanted. ECF No. 41-1, Exh. 1 (Rowden Decl.), ¶ 17.

**STANDARD OF REVIEW**

**Motion to Dismiss**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all factual allegations set forth in the complaint are "taken as true." *Epstein v. Washington Energy Co.*, 83

REPORT AND RECOMMENDATION - 5

F.3d 1136, 1140 (9th Cir.1996). Rule 8(a) (2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). To survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965.

## DISCUSSION

The Prison Litigation Reform Act of 1995 (PLRA) mandates that:

> *No action shall be brought with respect to prison conditions* under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, *until such administrative remedies as are available are exhausted*.

42 U.S.C. § 1997e [emphasis added].

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought to court." *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 918-19 (2007). Inmates must exhaust their prison grievance remedies before filing suit if the prison grievance system is capable of providing any relief or taking any action in response to the grievance. "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001). The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

REPORT AND RECOMMENDATION - 6

The underlying premise is that requiring exhaustion "reduce[s] the quantity and improve[s] the quality of prisoner suits, [and] affords corrections officials an opportunity to address complaints internally. . . . In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 525.

Requiring proper exhaustion serves all of the goals of the rulings in *Nussle* and *Booth*, providing inmates an effective incentive to use the prison grievance system and thereby provides prisons with a fair opportunity to correct their own mistakes. *Woodford v. Ngo*, 548 U.S. 81, 93-94, 126 S. Ct. 2378 (2006). This is particularly critical to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Id.* at 94 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491-492 [1973]). Courts have a limited role in reviewing the difficult and complex task of modern prison administration. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 [1987]) (urging a policy of judicial restraint as prison administration requires expertise, planning and the commitment of resources, all of which are the responsibility of the legislative and executive branches).

The exhaustion requirement applies to all claims in a complaint; it is not enough to exhaust administrative remedies as to some claims and then use that exhaustion as a jurisdictional hook on which to hang unexhausted claims in a federal civil rights action. *See Graves v. Norris,* 218 F.3d 884, 885 (8th Cir. 2000); *accord Terrell v. Brewer,* 935 F.2d 1015, 1018-19 (9th Cir. 1990) (in prisoner action brought under *Bivens* where only a portion of the claims had been exhausted, "the proper remedy [was] dismissal without prejudice"). This total

exhaustion rule best promotes the purposes of the exhaustion requirement, which include allowing a prison to take responsive action, filtering out frivolous cases, and creating administrative records. *See Porter,* 534 U.S. at 523-25.

Here, it is undisputed that there is a well-established grievance procedure available to inmates who are incarcerated in DOC institutions. ECF No. 41-1, Exh. 1 (Rowden Dec.). Exhibit 1. Under that system, an offender may file a grievance over a wide range of aspects of his incarceration, including: the existence, application and/or lack of DOC policies, rules and procedures; the actions of staff; retaliation by staff and prison conditions. *Id.* The system also provides a wide range of remedies available to inmates, including restitution, administrative actions, changes in policy, correction of records and agreement by department officials to remedy objectionable conditions. *Id.*

Defendants stipulate that Plaintiff has exhausted his administrative remedies regarding his claim that he was sexually assaulted by Officer Trotter during a pat search on April 5, 2011. ECF No. 41, p. 10 n. 3. However, the record reflects that Plaintiff has failed to exhaust the administrative remedies as to his remaining claims.

Plaintiff filed an initial grievance under Grievance No. 110629 alleging that he was being harassed by Defendant McAneney. ECF No. 41-1, Exh. 1 (Rowden Dec.), Attachment A. Specifically, Plaintiff alleged that starting on February 14, 2011, he was harassed by Sgt. McAneney because he did not lose any "good time" as a result of an infraction from earlier in the year. ECF No. 11, p. 4. Plaintiff's grievance was denied and he did not appeal this denial. ECF 41-1, Exh. 1 (Rowden Decl.), Attachment A. Therefore, he did not exhaust the administrative process as to this grievance.

Next, Plaintiff alleges Defendant Roberts assaulted and threatened him with retaliation

REPORT AND RECOMMENDATION - 8

during and immediately after his April 5, 2011, pat search by Defendant Trotter. ECF No. 11, pp. 4-5. Plaintiff filed Grievance No. 1106582 complaining of Sgt. Roberts' alleged assault and retaliation. ECF No. 41-1, Exh. 1 (Rowden Decl.), Attachment C. This grievance was denied, appealed to Level II, denied again and not appealed to Level III. *Id.*; Exh. 1 (Rowden Decl.), Attachment D. Therefore, Plaintiff did not exhaust the administrative process as to this grievance.

Plaintiff alleges he was harassed and retaliated against by Defendants McAneney and Quenga after filing his PREA complaint. ECF No. 11, p. 5. Plaintiff filed Grievance No. 1107766, Level I, regarding this alleged conduct, which was deemed resolved and closed when Plaintiff was moved to a different housing unit. Plaintiff did not appeal this decision. ECF No. 41-1, Exh. 1, Attachment E. Plaintiff later filed a second grievance (also Level I) alleging that Sgt. Quenga was threatening and intimidating him. That grievance was denied. *Id.*, Exh. 1, Attachment F. Plaintiff did not appeal that denial. *Id.* Therefore, Plaintiff did not exhaust the administrative process regarding his claims of retaliation and harassment by Defendants McAneney and Quenga.

Plaintiff further alleges that a staff member not named in this suit filed a false infraction against him regarding his hair tie and that Defendant McAneney did not give him a fair hearing on that infraction as retaliation for filing his PREA complaint. ECF No. 11, p. 5. As a result of that infraction, Plaintiff lost privileges for 20 days. *Id.* Plaintiff did not appeal the infraction or file a grievance regarding his staff misconduct allegation that Defendant McAneney did not give him his due process. ECF No. 41-1, Exh. 2 (Declaration of Tony Dunnington), Exh. 1 (Rowden Decl.), ¶ 17. Thus, Plaintiff failed to exhaust available administrative remedies for his due process and retaliation claims against Defendant McAneney.

REPORT AND RECOMMENDATION - 9

Plaintiff alleges that Defendants Demars and Russell ignored his claims and failed to move him and protect him from retaliation by other DOC employees. ECF No. 11, pp. 5-6. However, Plaintiff never filed any grievances relating to this alleged misconduct and therefore has not exhausted his administrative remedies for his claims against Defendants Demars and Russell. ECF No. 41-1, Exh. 1 (Rowden Decl.), ¶ 17.

Plaintiff does not dispute these facts, but claims that he has exhausted his claims because he filed grievances, sent "kiosk emails, met with all staff and everything was denied." ECF No. 42, p. 1. However, the mere filing of grievances does not satisfy the exhaustion requirement. Under the OGP, if Plaintiff was dissatisfied with the response received from the institution with respect to any type of grievance or at any level of his grievance, he would have been required to go through four levels of review in order to properly exhaust his claims. He did not do so. He offers no argument as to why he should be relieved of that obligation.

Defendants argue that Plaintiff's claims should be dismissed *with* prejudice because Plaintiff has already had the opportunity to exhaust and cannot now exhaust his administrative remedies. ECF No. 41, p. 11. However, the Court finds no authority in this Circuit to dismiss a case for failure to exhaust remedies under the PLRA *with prejudice* based on such a time bar. Failure to exhaust administrative remedies is properly treated as a curable defect and should generally result in a dismissal *without* prejudice. *City of Oakland, Cal. v. Hotels.com LP*, 572 F.3d 958, 962 (9th Cir. 2009) (emphasis added). The Ninth Circuit has held that if the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal *without* prejudice. *Wyatt,* 315 F.3d at 1119-20; *O'Guinn v. Lovelock Correctional Center,* 502 F.3d 1056, 1059 (9th Cir. 2007) (emphasis added).

REPORT AND RECOMMENDATION - 10

Claims that are not exhausted must be dismissed and this Court lacks discretion to resolve those claims on the merits. See e.g., *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002) (*citing, among others, Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir.1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.") Therefore, the Court does not address the merits of Plaintiff's claims or remaining issues raised in Defendants' motion to dismiss.

## CONCLUSION

The undersigned recommends that Defendant's motion to dismiss (ECF No. 41) be **GRANTED** and that Plaintiff's claims against Defendants be **dismissed without prejudice** for failure to exhaust **except as to Plaintiff's Eighth Amendment claims against Defendant Trotter**.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 9, 2012**, as noted in the caption.

**DATED** this  16th  day of February, 2012.

Karen L. Strombom
United States Magistrate Judge